# EXHIBIT 6

CONFIDENTIAL

## Amendment to Supply Agreement

This Amendment (the "Amendment") is made as of the 1st day of April 2004, to the Supply Agreement dated 15th April 2001 ("Supply Agreement"), by and between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc.

**WHEREAS**, Seller has notified Buyer of the intent to cease manufacturing operations of the Products in West Windsor, Vermont, and Buyer has agreed to qualify new product ("New Product") from Seller's manufacturing operations located in Houston, Texas

**NOW THEREFORE**, for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree to amend the Supply Agreement as follows:

1. Except as specifically provided for in this Amendment, all other terms and conditions of the Agreement shall continue in full force and effect. All defined terms not otherwise defined in this Amendment shall have the meaning set out in the Agreement.

2. New Product is to be substituted for "Products" in all cases throughout the Supply Agreement.

3. Annex A is amended and restated as set out on the attached Annex A to this Amendment. In addition, the parties agree that all New Product shall be supplied by Seller solely from the facility specified on the attached Annex A.

4. Annex B, Section A, is hereby amended and restated as follows:

   i. Olympic H Talc US$368 PER METRIC TON effective through December 31, 2006

   ii. Price decreases to US$348 PER METRIC TON effective January 1, 2007 through December 31, 2007

   iii. Price decreases to US$338 PER METRIC TON effective January 1, 2008 and beyond.

   iv.  All prices are FOB delivered to Buyer in Royston, Georgia via Bulk Rail

   v.  Pricing from Seller can only be altered should raw material increases or freight increases exceed 3% in any given year. Raw materials include talc, energy costs, packaging, and pallets.  Transportation increases include freight from Houston, Texas to Royston, Georgia as well as freight from China to Houston.  In the event any such increases exceed 3% in a particular year, the prices for the New Product shall be adjusted proportionately upward for the next calendar year to the extent necessary to reflect the amount of the increase which is in excess of 3%.  All material or freight increase requests must be substantiated by documentation of increase from increasing party.

5. Annex B, Section B, is hereby deleted in its entirety.

6. Section 1( c) is hereby deleted in its entirety.

7. Section 1(d) is amended from F.O.B. Ludlow, Vermont (the "Shipping Point"), to F.O.B. Royston, Georgia (the "Delivery Point").  The risk of loss with respect to the New Product shall now pass to Buyer upon receipt and acceptance at the Delivery Point.

8. Section 3 (3) is amended from "…Seller shall maintain an adequate number of dedicated silos to ensure timely shipment", to read  "…Seller shall maintain an adequate number of dedicated silos and rail cars to ensure timely shipment".

9. Section 3 (d) is amended from "…Agreement, *provided, however,…*" to read "…Agreement.  In such event Seller shall, at Buyer's request, make available such dedicated rail cars as may be sufficient to obtain New Product from such other source."

10. Section 4 (c) is amended to delete clause (iii) in its entirety.

11. Section 7 (a) (ii) is amended from "shall be limited to replacement…. Sections 4 (c) above" to "shall be limited to replacement of New Product".

12. Section 8 (a) is amended in its entirety to read "This Agreement shall expire and terminate effective December 31, 2006, unless sooner terminated pursuant to the other provisions of this Agreement."

CONFIDENTIAL

13. Section 22 (b) is amended to read "Contract Year shall mean, for any period of time after the date of this Amendment, the twelve-month period commencing on April 1st of any year during the term of this Agreement and concluding on March 31st of the next succeeding year

14. Section 23 (a) is amended to read "Seller will assume the leasehold interest of Buyer for the equipment specified on the attached Annex B (the "Equipment") pursuant to the Transfer Agreement in the form set out on the attached Annex C. Upon execution of the Transfer Agreement, Buyer shall have no further ownership or leasehold interest of any nature in the Equipment, and all right, title and interest in the Equipment shall transfer to Seller.

15. Section 23(b) is amended to remove clause (iii) thereof.

16. Section 23(c) is amended to remove clauses (ii) and (iv) thereof.

17. Section 23 (e) is amended to read "Buyer shall be responsible for training its employees to operate properly the Equipment and shall supervise all operations thereof. Buyer shall be responsible for all personal damages or injuries and for any damage to property or Equipment resulting from (i) Buyer's operation of the Equipment, or (ii) Buyer's use of the Equipment for any purpose other than as specifically contemplated by this Agreement.

18. Section 23(f) is hereby deleted in its entirety.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the day and year first above written.

**LUZENAC AMERICA, INC.**

BY: _____
Name: _DANIEL D HARRIS_
Title: _PRESIDENT_

**JOHNSON & JOHNSON CONSUMER COMPANIES, INC.**

BY: _____
Name: _D. Michael Wittman_
Title: _VP of Operations_