# EXHIBIT 13

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., *et al.*,[1] | Case No. 19-10289 (LSS) |
| Debtors. | (Jointly Administered) |
| IMERYS TALC AMERICA, INC. IMERYS TALC VERMONT, INC. and IMERYS TALC CANADA, INC., | |
| Plaintiffs, | Adv. Pro. No. 19-50115 (LSS) |
| v. | |
| CYPRUS AMAX MINERALS COMPANY and CYPRUS MINES CORPORATION, | |
| Defendants. | |

## THE PROPOSED FUTURE CLAIMANTS' REPRESENTATIVE'S MOTION TO INTERVENE

Pursuant to Rule 24(a) or, alternatively, Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure, James L. Patton, Jr., the proposed legal representative (the "Proposed FCR")[2] for unknown individuals who do not currently hold talc-related claims against the Debtors but are expected to assert claims or "Future Claims" against the Debtors in the future (the "Future

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

[2] The Debtors and the U.S. Trustee are in discussions regarding the scheduling of the substantive hearing on the Debtors' motion for an order appointing the Proposed FCR.

Claimants"), hereby submits this motion (the "<u>Motion</u>"), in his own right or on behalf of such other person as the Court may ultimately appoint as the representative for Future Claimants in these chapter 11 cases (as appointed, the "<u>FCR</u>"), for entry of an order permitting the FCR to intervene as a plaintiff in the above-captioned adversary proceeding (the "<u>Action</u>") commenced by Imerys Talc America, Inc. ("<u>ITA</u>") and its affiliated chapter 11 debtors (collectively, the "<u>Debtors</u>") against Cyprus Amax Minerals Company ("<u>CAMC</u>") and Cyprus Mines Corporation ("<u>Cyprus Mines</u>" and, together with CAMC, the "<u>Defendants</u>").

### **INTRODUCTION**

1.     As in any bankruptcy case, numerous creditors and parties in interest will play a role in this reorganization. This case, however, has an additional element. It involves asbestos-related claims and liabilities, and future claims or demands.

2.     The Debtors initiated these cases to resolve for themselves, and likely certain non-debtor affiliates, pending and future claims by plaintiffs alleging personal injuries caused by exposure to talc mined, processed, or distributed by one or more of the Debtors (the "<u>Talc Claims</u>"). The Debtors' talc-related liability is owed primarily to two groups: those victims with manifest injuries ("<u>Current Claimants</u>") and those victims who are not yet aware of their injuries but who will assert claims ("<u>Future Claims</u>") for compensation in the future—the Future Claimants. Given their likely number and value, the disposition of Future Claims is arguably the single most important aspect of this bankruptcy. Thousands of persons injured by the Debtors' talc will assert claims for compensation in the future. But since their injuries have yet to manifest themselves, the Future Claimants are unable to appear in this proceeding. It is the duty of the FCR to represent these Future Claimants and to assure that their rights and interests are fully protected.

01:24335170.1

3.  The FCR's duties include assuring that sufficient assets will be available to fairly compensate Future Claimants. The Debtors' insurance assets will likely provide a significant portion of the compensation available to Future Claimants, and thus, those insurance assets will be among the singular interests of any FCR appointed in these cases.

4.  As the statutory fiduciary representative of all Future Claimants under 11 U.S.C. §§ 105(a) and 524(g) and a party in interest under 11 U.S.C. § 1109(b), the FCR has an absolute right under Rule 24(a) of the Federal Rules of Civil Procedure to intervene in the Action on behalf of Future Claimants. In the alternative, the Court should permit the FCR to intervene under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure. Intervention by the FCR in the Action is critical because it will enable the FCR to exercise his fiduciary duties to assert and protect Future Claimants' interests, which interests would not otherwise be adequately protected by the existing parties to this Action, including the Debtors and the Committee,[3] who owe no duty to Future Claimants and who cannot provide the "vigorous and faithful vicarious representation" required by due process.[4] The FCR will be judicious in exercising his or her rights of participation in motion practice, discovery, settlement discussions, and proceedings before the Court, but the FCR's intervention is necessary to ensure that Future Claimants' rights and interests are fully protected.

---

[3] The Official Committee of Tort Claimants (the "Committee") has moved to intervene in the Action. *See* Adv. Docket No. 16.

[4] *See Ivy v. Diamond Shamrock Chems. Co. (In re Agent Orange Prod. Liab. Litig.)*, 996 F.2d 1425, 1435 (2d Cir. 1993).

## JURISDICTION AND VENUE

5.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 1334(b) and 157(b)(1). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and

1409(a).

## FACTUAL BACKGROUND

**A. The Debtors' Stated Goal for These Cases Is to Establish a Trust That Will Fairly Compensate the Holders of Current and Future Talc Claims.**

6.     The Debtors commenced these chapter 11 cases on February 13, 2019 (the

"Petition Date") with the "primary goal" of confirming a "consensual plan of reorganization

pursuant to sections 105(a), 524(g), and 1129 of the Bankruptcy Code that channels all of the

present and future Talc Claims to a trust vested with substantial assets and provides for a

channeling injunction prohibiting claimants from asserting" Talc Claims against the Debtors or

their affiliates.[5]

7.     Section 524(g) is a unique provision of the Bankruptcy Code that serves the dual

purposes of (i) enabling a debtor with significant asbestos liability to restructure and emerge as a

viable business entity and (ii) providing suitable funding to pay equitably the claims of current

and future victims of asbestos-related diseases.[6] Section 524(g) conditions issuance of a

channeling injunction on multiple requirements, including certain findings about the debtor's

---

[5] Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings ¶ 11(the "First Day Declaration").

[6] *See In re Federal-Mogul Global Inc.*, 684 F.3d 355, 359 (3d Cir. 2012); *see also* 11 U.S.C. § 524(g)(2)(B)(ii)(V) (providing that there must be "a reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner."); § 524(g)(4)(B)(ii) (a plan cannot be confirmed unless it is deemed to be "fair and equitable with respect to the persons that might subsequently assert [future] demands"); 140 Cong. Rec. H10,765 (Oct. 4, 1994) (stating that the "new subsection (g) to section 524 of the Code" was set up to establish equitable mechanisms to resolve "future personal injury claims against the debtor based on exposure to asbestos-containing products" and that "the interests of future claimants are ill-served if Johns-Manville and other asbestos companies are forced into liquidation and lose their ability to generate stock value and profits that can be used to satisfy claims").

01:24335170.1

liability and adequate protections for claimants, such as a supermajority vote by current claimants and appointment of a future claimants' representative to represent the currently unidentifiable victims who may seek compensation for their injuries after a plan of reorganization is confirmed.[7]

8.      Indeed, due process, fundamental fairness, and the limits of subject-matter jurisdiction mark the outer boundaries of what may be considered a "claim" subject to discharge in bankruptcy. Because there is no effective way to notify unknown and not-yet-symptomatic victims of their right to participate in bankruptcy proceedings, the claims of these individuals cannot be asserted before confirmation of a chapter 11 plan and likely would not be discharged through any such plan.[8] Thus, without "vigorous and faithful vicarious representation" by the FCR,[9] a bankruptcy discharge alone will not operate to free the Debtors from their Future Claims, nor will it preclude Future Claimants from asserting direct actions against the Debtors after the chapter 11 cases have concluded.[10]

9.      Accordingly, under § 524(g), to the extent a debtor is seeking confirmation of a plan pursuant to which the court will issue an injunction channeling future claims and demands to a trust, a legal representative must be appointed for the purpose of protecting the rights of the individuals holding those future claims and demands.[11]

---

[7] *Id.*; *see also* 11 U.S.C. § 524(g)(4)(B)(i) (an injunction affecting future claimants may be issued only if "the court appoints a legal representative for the purpose of *protecting the rights of persons* that might subsequently assert demands" (emphasis added)).

[8] *See Wright v. Owens Corning*, 679 F.3d 101, 107 (3d Cir. 2012) ("Inadequate notice accordingly 'precludes discharge of a claim in bankruptcy.'" (quoting *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995))).

[9] *Diamond Shamrock Chems.*, 996 F.2d at 1435.

[10] *See* 11 U.S.C. § 1141(d); 11 U.S.C. § 524(e); *see also Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997); *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir. 1993).

[11] *See* 11 U.S.C. § 524(g)(4)(B)(i).

### B. The FCR's Duties Include Assuring That Trust Funding Will Be Sufficient to Fairly Compensate Future Claimants.

10.     On February 27, 2019, the Debtors filed a motion seeking entry of an order appointing the Proposed FCR as "the legal representative for future talc personal injury claimants of the Debtors."[12]

11.     The benefits of appointing an FCR experienced in asbestos bankruptcies are many. The technical details regarding the structure and timing of trust contributions, the scope of the channeling injunction, the technicalities of § 524(g), and the trust distribution procedures and trust agreement that will govern the trust created pursuant to § 524(g) are largely unique to asbestos bankruptcies and thus beyond the ken of even an experienced bankruptcy practitioner.[13] Appointment of an experienced FCR also minimizes the potential for missteps that could prolong the reorganization process, delay payments to current claimants, and result in substantially increased professional fees and other bankruptcy-related expenses. Finally, appointment of an experienced and well-regarded FCR helps establish and preserve an appropriate factual record, which helps ensure that the validity of the channeling injunction will not be subject to collateral attack.

12.     The FCR will be charged with protecting and representing the rights of persons that might subsequently assert Future Claims against the Debtors.[14] This requires the FCR to

---

[12] Debtors' Motion for Order Appointing James L. Patton, Jr., as Legal Representative for Future Talc Personal Injury Claimants, *Nunc Pro Tunc* to the Petition Date at 1 [Docket No. 100] (the "FCR Appointment Motion").

[13] *See, e.g.*, S. Elizabeth Gibson, Fed. Judicial Ctr., *Judicial Management of Mass Tort Bankruptcy Cases* 67 (2005) ("In deciding whom to appoint, judges should look for persons with the training and experience needed to deal competently with the tort, bankruptcy, corporate, financial, and constitutional issues that will be involved in representing the interests of future claimants.").

[14] *See, e.g.*, FCR Appointment Motion ¶ 21 ("To protect the interests of such Future Claimants it is necessary and appropriate for the Court to appoint a legal representative to act as their fiduciary."); *id.* ¶ 22 ("The appointment of a future claimants' representative is necessary to represent the interests of Future Claimants and ensure that the relief sought through a plan of reorganization in this case comports with due process and fairness.").

play a central role in the development and approval of a plan of reorganization, including first-hand participation in negotiating the plan and the right to be heard with reference to any motion filed.[15]

13.     The FCR's most important duties are to assure that the protections of the Debtors' proposed channeling injunction are afforded only where consistent with the interests of Future Claimants and to assure that any claims-resolution trust ultimately proposed in this case is adequately funded and appropriately structured to assure that Future Claimants will be treated and paid in a manner substantially similar to Current Claimants. The estimated number and value of Future Claims in this case makes the holders of such Future Claims one of the most important constituencies in this bankruptcy. It is likely that tens of thousands of Future Claimants will assert claims for compensation.

14.     Accordingly, one of the questions central to these chapter 11 cases is: at what level must a trust be funded to compensate Future Claimants appropriately? One of the FCR's primary objectives will be to provide the Court with the information necessary to answer this question.

### C. The Debtors' Insurance Assets Will Provide Significant Funding for the Trust.

15.     On March 7, 2019, the Debtors commenced the above-captioned adversary proceeding by filing the *Debtors' Complaint for Injunctive and Declaratory Relief* [Adv. Docket

---

[15] *See, e.g.*, *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 66 B.R. 517, 526–27 (Bankr. S.D.N.Y. 1986); *In re UNR Indus., Inc.*, 71 B.R. 467, 479 (Bankr. N.D. Ill. 1987) ("[T]he Legal Representative is not in fact a committee. Instead, he has been granted the powers and responsibilities of a committee."); *In re Keene Corp.*, 188 B.R. 903, 905 (Bankr. S.D.N.Y. 1995) (denying a co-defendant of the debtor leave to file a late claim for contribution or indemnity in the face of opposition by the future claimants' representative); *Official Comm. of Injury Claimants v. Official Comm. of Unsecured Creditors (In re Eagle Picher Indus., Inc.)*, 169 B.R. 135, 138 (Bankr. S.D. Ohio 1994) (staying discovery sought by the Official Committee of Unsecured Creditors in reference to more than 100 proofs of claim filed by asbestos claimants in the face of opposition from the futures representative).

No. 1] (the "Complaint").[16] The Complaint seeks to stop Defendants' attempts to access and deplete the proceeds of the Insurance Policies, which would have the effect of reducing the amounts otherwise available to the Debtors' creditors, through a trust, to cover talc-related claims.

16.     The Action is the first of many insurance- and indemnity-related disputes that may arise in these Chapter 11 Cases. As the First Day Declaration makes plain, the Debtors have significant insurance assets through varied primary and excess insurers, subject to potential competing claims from various current and former affiliates.[17]

17.     As explained in more detail in the First Day Declaration, the Debtors have the right to seek insurance coverage under (i) four primary liability policies that Zurich American Insurance Company ("Zurich") issued to Luzenac America (a prior owner of the Debtors) from May 1997 to May 2001 with total aggregate limits of liability of $20 million and (ii) ten primary liability policies that Zurich issued to entities affiliated with Rio Tinto (another prior owner of the Debtors) from May 2001 to May 2011 with total aggregate limits of $480 million (collectively, the "Zurich Policies").

18.     The Debtors also have the right to seek insurance coverage under four primary general liability policies and four umbrella polices issued by XL Insurance America, Inc. ("XL") to Imerys USA and its subsidiaries for the period of January 2011 to January 2015 (collectively, the "XL Policies"). The four primary XL Policies had total aggregate limits of $4 million, and the four umbrella XL Policies had total aggregate limits of $34 million. It is the Proposed FCR's

---

[16] Capitalized terms not otherwise defined herein have the meanings given to them in the Complaint.

[17] First Day Declaration ¶¶ 38–45.

understanding that, as of the Petition Date, the XL Policies have total remaining limits of

approximately $37 million.[18]

19.     Based on his prepetition diligence, the Proposed FCR understands that the

Debtors also have the right to seek the proceeds from various insurance policies issued to

(i) Standard Oil (Indiana) and (ii) J&J and its subsidiaries. The Standard Oil (Indiana) policies

and J&J policies had total aggregate limits of approximately $1.2 billion and approximately $2

billion, respectively, although the remaining and available limits on these policies were unknown

as of the Petition Date.[19]

20.     Finally, and most significantly here, the Debtors have rights to the proceeds of the

Insurance Policies that provide coverage for liabilities arising out of the talc business of Cyprus.

More specifically, the Debtors have the right to seek insurance coverage under (i) four primary

liability policies issued by The American Insurance Company from May 1961 to October 1964

and (ii) umbrella and excess policies issued by various insurers from April 1962 to July 1986

with total aggregate limits of approximately $180 million.[20]

21.     Given the FCR's fiduciary duty to protect the interests of Future Claimants and to

assure that trust funding will be sufficient to compensate Future Claimants fairly, it is critical that

the FCR be permitted to intervene to protect against the potential dissipation of estate assets that

could otherwise be used to compensate Future Claimants.

---

[18] *See id.* ¶ 40.

[19] *See id.* ¶ 41.

[20] *See id.*

## RELIEF REQUESTED[21]

22.     The Proposed FCR respectfully requests that the Court enter an order permitting the FCR to intervene as of right in the Action as a plaintiff pursuant to Rule 24(a) of the Federal Rules of Civil Procedure (the "Rules"). Alternatively, the Proposed FCR respectfully requests that the Court exercise its discretion and enter an order permitting the FCR to intervene in the Action pursuant to Rule 24(b)(1)(B). For the convenience of the current parties to the Action, and in the interest of being judicious about his participation in the Action, the Proposed FCR hereby adopts and incorporates the Debtors' Complaint by reference with respect to the relief it seeks against the Defendants, while reserving all of the FCR's rights as to any other or further relief. As such, the Proposed FCR will not file a pleading stating a claim or defense as would otherwise be required under Rule 24(c), unless the Court orders otherwise. In addition, the Proposed FCR does not intend to serve duplicative discovery or take other duplicative actions, and will coordinate with the other parties to the Action to work within the current schedule.

## BASIS FOR THE RELIEF REQUESTED

### I.     The FCR Has an Absolute Right to Intervene in the Action Under Rule 24(a).

Under Rule 24(a) of the Federal Rules of Civil Procedure, the FCR has an absolute right to intervene in the Action if (i) a federal statue gives him or her an unconditional right to intervene or (ii) disposing of the Action would impair or impede the FCR's ability to protect Future Claimants' interest in the Debtors' insurance assets and existing parties to the Action

---

[21] Prior to filing this Motion, the undersigned counsel to the Proposed FCR contacted counsel to the Debtors, the Committee, and the Defendants to obtain their consent with respect to the FCR's request to intervene in the Action. The Debtors and Committee have provided their consent, and the Defendants have informed the Proposed FCR that they will decide whether to consent to the FCR's intervention after reviewing this Motion.

would not adequately represent that interest.[22] Permitting the FCR's intervention is mandatory if either prong is met. Here, the FCR easily meets both.

**A. The FCR Has the Right to Intervene in the Action Under Rule 24(a)(1).**

23.     Rule 24(a)(1) requires that any person must be allowed to intervene if there is a federal statute that provides an "unconditional right" for that person to intervene. Here, the FCR has an unconditional right to intervene under §§ 105, 524(g), and 1109(b) of the Bankruptcy Code.

24.     To the extent a debtor is seeking confirmation of a plan pursuant to which the court will issue an injunction channeling future claims to a trust, § 524(g) requires a legal representative be appointed for the purpose of protecting the rights of future claimants.[23] As noted above, the Debtors' "primary goal in filing these Chapter 11 Cases" is to confirm a plan of reorganization that relies, in part, on §§ 105 and 524(g) of the Bankruptcy Code to channel Talc Claims to a trust.[24] Accordingly, the FCR has an unconditional statutory right to intervene on behalf of Future Claimants under § 524(g) of the Bankruptcy Code.[25]

25.     The FCR also has an unconditional right to intervene under § 1109(b) of the Bankruptcy Code. Section 1109(b) provides, in pertinent part, that a party in interest "may raise and may appear and be heard on any issue in a case under this chapter . . . ." The FCR is

---

[22] *See* Fed. R. Civ. P. 24(a).

[23] *See* 11 U.S.C. § 524(g)(4)(B)(i).

[24] First Day Declaration ¶ 11.

[25] *Cf. In re Celotex Corp.*, 377 B.R. 345, 351 (Bankr. M.D. Fla. 2006) ("[T]he Legal Representative and the TAC are charged with the duty of protecting the interests of the present and future Asbestos Personal Injury Claimants. If they are not permitted to intervene, therefore, their ability to protect their constituencies' interests may be impaired or impeded, since the disposition of this action will ultimately affect . . . the amount of the funds that are available to pay Personal Injury Claims.").

indisputably a party in interest under § 1109(b).[26] The Third Circuit has also made clear that a party's unconditional right to appear and be heard under § 1109(b) extends to adversary proceedings such as the Action.[27] Indeed, the proposed order appointing the Proposed FCR is explicit that the FCR will have "standing under section 1109(b) of the Bankruptcy Code to be heard as a party-in-interest *in all matters related to the Chapter 11 Cases* and shall have such powers and duties of a committee, as set forth in section 1103 of the Bankruptcy Code, as are appropriate for a Future Claimants' Representative."[28]

26.      Accordingly, §§ 524(g) and 1109(b) of the Bankruptcy Code give the FCR an "unconditional right" to intervene in the Action under Rule 24(a)(1). This alone is sufficient for the Court to grant the Motion.

## B.  The FCR Has the Right to Intervene in the Action Under Rule 24(a)(2).

27.      Rule 24(a)(2) also entitles the FCR to intervene in the Action as of right. According to Third Circuit law, a party seeking to intervene under Rule 24(a)(2) need only show: "1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests."[29] These four factors are easily established here.

---

[26] *See, e.g.*, *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985) ("Future claimants are undeniably parties in interest to these reorganization proceedings pursuant to the broad, flexible definition of that term . . . ." (quoting *In re Johns-Manville Corp.*, 36 B.R. 743, 749 (Bankr. S.D.N.Y. 1984), *aff'd*, *In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984))).

[27] *See In re Marin Motor Oil, Inc.*, 689 F.2d 445, 451 (3d Cir. 1982) (holding that § 1109(b) gave the creditors' committee the unconditional right to participate in an adversary proceeding because "the exact language of section 1109(b) . . . grants a right to appear and be heard not in 'a case' but 'on any issue in a case'"); *see also Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1240 (3d Cir. 1994) ("[W]e hold that § 1109(b) as interpreted by *Marin* allows creditors' committees to intervene in non-core, 'related to' proceedings pending in a federal district court.").

[28] FCR Appointment Motion at Ex. A (emphasis added).

[29] *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005).

28.     First, the Motion is timely because "proceedings of substance on the merits" have not yet occurred and because current parties to the Action would not be prejudiced by the FCR's intervention.[30] The FCR is adopting and incorporating the Debtors' Complaint by reference with respect to the relief it seeks against the Defendants, while reserving the FCR's rights as to any other or further relief, and will coordinate with the other parties to the Action to work within the current schedule. Thus, intervention by the FCR will not delay or impede the Action. Moreover, this Motion is being filed before an order has even been entered appointing the FCR who will protect the rights of Future Claimants in connection with the Action. Accordingly, the Motion is plainly timely.

29.     Second, Future Claimants have a substantial interest in the Action.[31] The Debtors' stated goal in seeking declaratory and injunctive relief is to stop Defendants' attempts to access and deplete the proceeds of the Insurance Policies.[32] Depletion of the Debtors' insurance proceeds would have a material impact on the amounts otherwise available to Future Claimants, through a trust, to cover talc-related claims.[33] As the statutory fiduciary representative of all Future Claimants, the FCR has a direct interest in asserting and protecting the rights of Future Claimants.

---

[30] *Cf. Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369–70 (3d Cir. 1995) (holding that intervention was timely when "proceedings of substance on the merits" had not yet occurred and current parties would not be prejudiced by intervention); *Consol. SWINC Estate v. ACE USA, Inc. (In re Stone & Webster, Inc.)*, 380 B.R. 366, 370 (Bankr. D. Del. 2008) (same).

[31] *See Liberty Mut. Ins. Co.*, 419 F.3d at 220 (holding that "[t]o establish a sufficient interest for intervention," an intervenor must show "'an interest relating to the property or transaction which is the subject of the action'" (quoting *Mountain Top Condo.*, 72 F.3d at 366)).

[32] *See* Complaint ¶ 2.

[33] *See, e.g.,* Complaint ¶ 37 ("[F]ailure to grant the requested injunction would irreparably harm the Debtors' reorganization efforts by allowing a third party to utilize property of the Debtors' estates that would otherwise be available to fund a trust in furtherance of the Debtors' efforts to effectuate a restructuring plan that will provide for the fair and equitable treatment of all Talc Claims.").

30.     Third, the Future Claimants' interests may be impaired or otherwise affected by the disposition of the Action.[34] As noted above, the Court is being called upon to, among other things, stop Defendants' attempts to access and deplete the proceeds of the Insurance Policies.[35] As such, the outcome of the Action will have a material impact on the amounts otherwise available to Future Claimants, through a trust, to cover Talc Claims.[36] Again, the FCR, as the statutory fiduciary representative of all Future Claimants, has a strong interest in presenting arguments on the issues raised in the Complaint to protect Future Claimants against a potential reduction in the available compensation.

31.     Lastly, no existing party adequately represents Future Claimants' interests in this Action. To prevail on this factor, the FCR need only show that the representation of Future Claimants' interests "may be inadequate."[37] Accordingly, the FCR "'has a minimal burden of showing that the existing parties cannot adequately represent its interest.'"[38] In *Celotex*, for example, the Bankruptcy Court held that the future claimants' representative and the trust advisory committee comprised of current claimants each met the "minimal burden" to intervene in an adversary proceeding that could affect trust assets. As the *Celotex* court explained, the future claimants' representative and the trust advisory committee "have singular constituencies with clear economic interests."

---

[34] *See Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 162 (3d Cir. 1995) (holding that a party seeking intervention must demonstrate that the underlying lawsuit represents a tangible threat to its legally protectable interest); *see also* Rule 24, Advisory Committee Notes, 1966 Amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should . . . be entitled to intervene.").

[35] *See* Complaint ¶ 2.

[36] *See, e.g.*, Complaint ¶ 37.

[37] *Mountain Top*, 72 F.3d at 368–69 (internal quotation omitted).

[38] *Celotex,* 377 B.R. at 351 (quoting *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1245 (11th Cir. 2002)).

32.     The Third Circuit has similarly explained that, "future claimants require their own spokesperson" because the debtor and the creditors' committee do not "have interests similar to those of future claimants . . . ."[39] Indeed, neither the Debtors nor the Committee owe a fiduciary duty to Future Claimants. It is only the FCR who can provide the "vigorous and faithful vicarious representation" that ameliorates the due-process concerns associated with the unknown and asymptomatic individuals whose rights to compensation will be affected by the outcome of the Action.[40] Without independent representation, Future Claimants risk receiving less favorable treatment than Current Claimants in any potential resolution of the Action.[41] Indeed, it is the unknown Future Claimants who bear the greatest risks in chapter 11 cases such as the Debtors'. Once a debtor has redirected its liability to a claims-resolution trust, it is the latecomers who will be left with nowhere to turn if trust funding is inadequate.

33.     Accordingly, the FCR easily meets the standard for intervention as of right under Rule 24(a)(2), and the Motion should therefore be granted.

## II.     Permissive Intervention Is Warranted Under Rule 24(b).

34.     Alternatively, the FCR seeks permission to intervene under Rule 24(b)(1)(B), which states that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."[42] Permissive intervention is warranted, given that the Motion is timely and there is a substantial overlap of questions of law and fact between the FCR's arguments and the Debtors' likely

---

[39] *Amatex*, 755 F.2d at 1042-43.

[40] *Diamond Shamrock Chems.*, 996 F.2d at 1435.

[41] *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 242 (3d Cir. 2004) (recounting how future claimants received "demonstrably unequal" treatment under deal struck before appointment of future claimants' representative).

[42] Fed. R. Civ. P. 24(b)(1)(B).

arguments in this Action. Moreover, as noted above, permitting the FCR to intervene will not

unduly delay or prejudice the adjudication of the existing parties' rights.[43]

## CONCLUSION

For the reasons set forth above, the Proposed FCR respectfully requests that the Court

grant the Motion and enter the proposed order, annexed hereto as **Exhibit A**, approving the

intervention of the FCR as a plaintiff in the Action pursuant to Rule 24(a) or, alternatively, Rule

24(b)(1)(B).

Dated: March 29, 2019        YOUNG CONAWAY STARGATT & TAYLOR, LLP

                             */s/ Sharon M. Zieg*
                             Robert S. Brady (No. 2847)
                             Edwin J. Harron (No. 3396)
                             Sharon M. Zieg (No. 4196)
                             Rodney Square
                             1000 North King Street
                             Wilmington, Delaware 19801
                             Telephone: (302) 571-6600
                             Facsimile: (302) 571-1253
                             Email: rbrady@ycst.com
                                    eharron@ycst.com
                                    szieg@ycst.com

                             *Proposed Counsel to the Proposed FCR*

---

[43] *See* Rule 24(b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

**Exhibit A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>IMERYS TALC AMERICA, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10289 (LSS)<br><br>(Jointly Administered) |
| IMERYS TALC AMERICA, INC. IMERYS TALC VERMONT, INC. and IMERYS TALC CANADA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CYPRUS AMAX MINERALS COMPANY and CYPRUS MINES CORPORATION,<br><br>Defendants. | Adv. Pro. No. 19-50115 (LSS) |

## ORDER GRANTING THE PROPOSED FUTURE CLAIMANTS' REPRESENTATIVE'S MOTION TO INTERVENE

Upon consideration of the motion (the "Motion") of James L. Patton, Jr., the proposed legal representative (the "Proposed FCR") for future talc personal-injury claimants against the Debtors ("Future Claimants"), in his own right or on behalf of such other person as the Court may ultimately appoint as the representative for Future Claimants in these chapter 11 cases (as appointed, the "FCR"), to intervene as a plaintiff in the above-captioned action (the "Action");

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, Georgia 30076.

and appropriate notice having been provided to all parties in interest; and for good cause

appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      The FCR is permitted to intervene as a plaintiff in the Action.

3.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation of this order.

Dated: _____, 2019         _____
Wilmington, Delaware                        LAURIE SELBER SILVERSTEIN
                                            UNITED STATES BANKRUPTCY JUDGE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 29, 2019, the foregoing **The Proposed Future Claimants' Representative's Motion to Intervene** was served upon the following in the manner indicated below:

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins, Esq.
Michael J. Merchant, Esq.
Marcos A. Ramos, Esq.
Amanda R. Steele, Esq.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
collins@rlf.com
merchant@rlf.com
ramos@rlf.com
steele@rlf.com
*Electronic Mail and Hand Delivery*

**LATHAM & WATKINS LLP**
Jeffrey E. Bjork, Esq.
Kimberly A. Posin, Esq.
Helena G. Tseregounis, Esq.
Amy C. Quartarolo, Esq.
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
jeff.bjork@lw.com
kim.posin@lw.com
helena.tseregounis@lw.com
amy.quartarolo@lw.com
*Electronic Mail and First Class Mail*

**LATHAM & WATKINS LLP**
Richard A. Levy, Esq.
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
richard.levy@lw.com
*Electronic Mail and First Class Mail*

**LATHAM & WATKINS LLP**
George A. Davis, Esq.
Keith A. Simon, Esq.
885 Third Avenue
New York, New York 10022
george.davis@lw.com
keith.simon@lw.com
*Electronic Mail and First Class Mail*

**NEAL, GERBER & EISENBERG LLP**
Angela R. Elbert, Esq.
Jason A. Frye, Esq.
Two North LaSalle Street, Suite 1700
Chicago, Illinois 60602-3801
aelbert@nge.com
jfrye@nge.com
*Electronic Mail and First Class Mail*

**MORRIS NICHOLS ARSHT & TUNNELL LLP**
Robert J. Dehney, Esq.
Gregory Werkheiser, Esq.
Matthew O. Talmo, Esq.
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
rdehney@MNAT.com
gwerkheiser@MNAT.com
mtalmo@MNAT.com
*Electronic Mail and Hand Delivery*

Paul E. Heath, Esq.
Katherine Drell Grissel, Esq.
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201-2975
pheath@velaw.com
kgrissel@velaw.com
*Electronic Mail and First Class Mail*

Natalie D. Ramsey, Esq.
Mark A. Fink, Esq.
Davis Lee Wright, Esq.
**ROBINSON & COLE LLP**
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
nramsey@rc.com
mfink@rc.com
dwright@rc.com
lkrepto@rc.com
*Electronic Mail and Hand Delivery*

Michael R. Enright, Esq.
Patrick M. Birney, Esq.
Christopher J. Hug, Esq.
280 Trumbull Street
Hartford, Connecticut 06103
menright@rc.com
pbirney@rc.com
*Electronic Mail and First Class Mail*

Rachel C. Strickland, Esq.
Jeffrey B. Korn, Esq.
Daniel I. Forman, Esq.
Jonathan D. Waisnor, Esq.
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
rstrickland@willkie.com
jkorn@willkie.com
dforman@willkie.com
jwaisnor@willkie.com
*Electronic Mail and First Class Mail*

Dated: March 29, 2019

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Sharon M. Zieg*
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Sara Beth A.R. Kohut (No. 4137)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
Email: eharron@ycst.com
Email: szieg@ycst.com
Email: skohut@ycst.com

*Proposed Counsel to the Proposed FCR*