# EXHIBIT 14

# UNITED STATES BANKRUPTCY COURT
## District of Delaware
## 824 Market Street, 3rd Floor
## Wilmington, DE 19801

**In Re:**                                              Chapter:  11
TK Holdings, Inc., et al.
      Debtor                          Bankruptcy No. 17–11375–BLS
_____

TK Holdings Inc.

    Plaintiff                               Adversary No. 17–50880–BLS

    vs.

State of Hawai'i, by its Office of Consumer Protection
, et al.

    Defendant

### *NOTICE OF FILING OF TRANSCRIPT AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION*

A transcript of the proceeding held on 8/16/2017 was filed on 8/23/2017 . The following deadlines apply:

The parties have  7 days to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *request for redaction* is 9/13/2017 .

If a request for redaction is filed, the redacted transcript is due 9/25/2017 .

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is 11/21/2017 unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber (see docket for Transcriber's information) or you may view the document at the clerk's office public terminal.

_____
Una O'Boyle, Clerk of Court

Date: 8/23/17

(ntc)

# Notice Recipients

District/Off: 0311−1          User: Brandon              Date Created: 8/23/2017

Case: 17−50880−BLS          Form ID: ntcAP              Total: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | | |
|---|---|---|---|---|---|
| ust | U.S. Trustee | Office of the United States Trustee | J. Caleb Boggs Federal Building | 844 King Street, Suite 2207 | Lockbox 35          Wilmington, DE 19801 |
| ust | U.S. Trustee | Office of United States Trustee | J. Caleb Boggs Federal Building | 844 King Street, Suite 2207 | Lockbox 35          Wilmington, DE 19899−0035 |

                                                                    TOTAL: 2

1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
2

3   IN RE:                             .   Chapter 11
                                       .
4   TK HOLDINGS, INC., *et al.*,       .
                                       .   Case No. 17-11375 (BLS)
5                                       .
                  Debtors.             .
6   . . . . . . . . . . . . . . . . .
    TK HOLDINGS INC., *et al.*,         .   Adv. Pro. No. 17-50880
7                                       .
                  Plaintiffs,          .
8                                       .
        - against -                    .
9                                       .
    STATE OF HAWAII, by its Office      .
10  Of Consumer Protection,            .   Courtroom No. 5
    GOVERNMENT OF THE UNITED STATES .       824 Market Street
11  VIRGIN ISLANDS, STATE OF NEW       .   Wilmington, Delaware 19801
    MEXICO, *ex rel.* HECTOR BALDERAS  .
12  Attorney General, *et al.*,         .   August 16, 2017
                                       .   11:00 A.M.
13                Defendants.          .
    . . . . . . . . . . . . . . . .
14

                       TRANSCRIPT OF HEARING
15            BEFORE HONORABLE BRENDAN L. SHANNON
                 UNITED STATES BANKRUPTCY JUDGE
16

TELEPHONIC APPEARANCES:
17

For the Debtors:        Marcia Goldstein, Esquire
18                       Theodore Tsekerides, Esquire
                         Matthew Goren, Esquire
19                       Ronit Berkovich, Esquire
                         Konrad L. Cailteux, Esquire
20                       Brett Michael Haywood, Esquire
                         WEIL GOTSHAL & MANGES LLP
21                       767 Fifth Avenue
                         New York, New York 10153
22
                         Mark D. Collins, Esquire
23                       Michael Joseph Merchant, Esquire
                         Amanda Steele, Esquire
24                       Russell Silberglied, Esquire
                         RICHARDS LAYTON & FINGER
25                       920 N. King Street
                         Wilmington, Delaware 19801

```
 1   ECRO:                      DANA MOORE

 2   Transcription Service:     Reliable
                                1007 N. Orange Street
 3                              Wilmington, Delaware 19801
                                Telephone:  (302) 654-8080
 4                              E-Mail:  gmatthews@reliable-co.com

 5   Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                   INDEX

2                                                                       Page

3        TELEPHONIC HEARING

4
         RULING                                                          4
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Telephonic hearing commenced at 11:00 a.m.)

2          THE COURT:  Good morning, counsel, this is Judge

3     Shannon.  I understand from the operator that all necessary

4     parties are on the call.

5          This is a hearing in the TK Holdings family of

6     cases; case number 17-11375.

7          This is the time that the court has set to issue

8     its ruling on the debtors' request for a preliminary

9     injunction in Adversary Proceeding Number 17-50880.

10          The court conducted a hearing last Wednesday, at

11    which extensive argument was heard and evidence was adduced

12    on behalf of all effected parties.

13          At the conclusion of the hearing, the court took

14    the matter under advisement with a commitment to provide a

15    ruling today.

16          As I said at the end of the hearing, given the

17    significance and complexity of the issues that are before the

18    court, as well as the number of effected parties, it is an

19    understatement to say that I would prefer to address this

20    dispute by way of formal written opinion.

21          But the circumstances of this case do not afford

22    the time that such an opinion would take.  So, I will provide

23    my ruling orally today and I will try to be as clear as I

24    can, but I would appreciate your patience, and I warn you

25    that you may have to bear with me a bit as I go on this

1    morning.

2         Before I rule, I must take a moment to acknowledge

3    and commend the parties.  The briefing was thorough,

4    excellent and helpful, and the presentations by counsel last

5    week helped greatly to clarify the complex dispute that's

6    before the court.

7         Also, it is not lost on me how much coordination

8    and cooperation was required among the parties to timely

9    provide the court with a manageable and, as I said, excellent

10   set of briefing.

11        In summary, I will grant in part and deny in part

12   the request for a preliminary injunction.  I will enter the

13   requested injunction as to the state actions for a period of

14   ninety (90) days through and including November 15, 2017,

15   including an injunction to cover Takata Corp or TKJP as I

16   find that Bankruptcy Code Section 1521(d) does not preclude

17   me from entering that relief.

18        So, I will enjoin the state actions as they relate

19   to the debtors and the other defendants, therein.

20        I will also grant the motion and enter the

21   requested preliminary injunction for a period of ninety (90)

22   days through and including November 15, 2017 as to all of the

23   individual other than the multidistrict litigation currently

24   pending in the Southern District of Florida.

25        The MDL will not be stayed by this court as to

 1   non-debtor litigants and, specifically, as to the OEMs for

 2   specific reasons that I will discuss in a few minutes.

 3        Turning to the issue before the court, we have two

 4   broad categories of litigation the debtors would seek to

 5   stay.

 6        First, the state actions which were commenced by

 7   Hawaii, New Mexico, and the U.S. Virgin Islands.  And,

 8   second, what we have called the individual actions, which

 9   include personal injury and economic loss actions, pending in

10   courts around the country and, in particular, in a

11   multidistrict litigation pending in Federal District Court in

12   Miami.

13        This second category of individual actions breaks

14   down further into personal injury litigation, class actions

15   alleging economic loss or diminution in the value of vehicles

16   on account of the debtors' products, and, finally, litigation

17   against the debtors for damages caused by delay or

18   unavailability of replacement airbags.

19        The operative feature of substantially all of this

20   litigation for our purposes today is that the automobile

21   manufacturers, whom we've collected called the OEMs or the

22   consenting OEMs, are parties with the debtors to these

23   litigations, either by way of having been sued alongside the

24   debtors or having third partied in the debtors after the

25   litigation commenced.

1       And the debtors presently enjoy the benefits of

2   Section 362(a) and the automatic stay.  So most of this

3   litigation is already stayed as to them with the possible

4   exception of the state actions, which are alleged to be

5   exempt from the automatic stay as an exercise of police or

6   regulatory power.

7       What the debtors seek here is to obtain an

8   injunction essentially to wrap the protections of the

9   automatic stay around the consenting OEMs and TKJP while they

10  pursue their reorganization.

11      The background facts are not in material dispute.

12  TKJP, TK Holdings and their affiliates are a multinational

13  Tier I supplier to a host of U.S. and foreign automobile

14  manufacturers.  The debtors manufactured and sold tens of

15  millions of airbag inflator systems containing phase

16  stabilized ammonium nitrate as the propellant.

17      The record reflects that especially under

18  environmental conditions characterized by high heat and

19  humidity, these PSAN inflators may degrade overtime and

20  rupture causing injury or death to the occupants of the

21  vehicle.

22      The debtor has acknowledged, and the court notes,

23  the suffering that has been caused on account of the

24  defective airbag systems and the court has carefully reviewed

25  the declarations of Mr. Rothenberg, Mr. Dean, and Mr. Miner

1  [ph] detailing examples of the injuries suffered by their

2  clients.  And I have had the benefit of their presentations

3  last week to provide a human face and context to these

4  lawsuits.

5          I am extremely sympathetic to the circumstances

6  that these claimants face and I am particularly sensitive to

7  the argument raised by the tort claimant's committee and

8  others regarding the potential consequences of a delay in

9  their lawsuits and, frankly, a delay in these injured persons

10 having their day in court.

11         The record reflects that there's been a criminal

12 investigation by federal authorities and, ultimately, a plea

13 arrangement for Takata that, among other things, must be

14 funded by the end of February 2018.  The record reflects that

15 the debtors have filed these cases pursuant to a bankruptcy

16 strategy or business plan that contemplates the sale of

17 substantially all of the debtors' assets to Key Safety

18 Systems pursuant to a plan of reorganization, with these

19 debtors retaining assets and operations related to

20 manufacturing of replacement kits to support the ongoing

21 product recall requirements.

22         The record further reflects that the debtors

23 advised the court at the outset of these cases that they had

24 to obtain the support of a consenting OEMs for their

25

1 reorganization strategy.  That support has been memorialized,

2 in part, in an accommodation agreement that is presently

3 scheduled to be presented to the court in September.

4      No plan of reorganization has been filed at this

5 point.  And the debtors have advised the court that they are

6 finalizing documentation relating to the plan and the

7 transaction with Key.

8      And so, we are here today with the debtor

9 requesting injunctive relief out of an expressed concern that

10 the various litigations that I mentioned above may delay,

11 distract from, or disrupt the debtors' intended

12 reorganization strategy.

13      Specifically, the debtors have requested that this

14 court enter a preliminary injunction to enjoin the state

15 actions and all of the individual litigation against TKJP and

16 the OEMs in order to afford them an opportunity to focus on

17 and pursue their reorganization plan.

18      The requested duration of the injunction by the

19 debtors is six months to take them through confirmation on

20 the timeline that was described by the debtors at the outset

21 of these cases.  However, in the absence of a filed plan and

22 related documents, I am not prepared to afford the debtors

23 the full runway that they have requested.

24      From the debtors' representations, I expect the

25 transaction documents and a plan will be filed long before

1   the expiration of the ninety (90) day stay that I am

2   imposing.  And if the debtors at that time wish to seek a

3   further extension of the stay perhaps to presumably get them

4   through confirmation, then I expect we will have a more

5   complete record upon which all parties may evaluate the

6   proposed reorganization, which lies at the heart of the

7   debtors' request for injunctive relief.

8           As always, the court starts with the determination

9   of its jurisdiction over the pending matter.  All parties

10  have correctly observed that Bankruptcy Code Section 105(a)

11  does not provide, in the words of the court in Combustion

12  Engineering, "an independent source of subject matter

13  jurisdiction."

14          Instead, this court's jurisdiction must be

15  established under 28 U.S.C. Sections 1334 and 157.  And,

16  again, all parties have briefed it, but it bears repeating

17  that bankruptcy Courts possess jurisdiction by referral from

18  the District Court of proceedings arising under Title 11 or

19  arising in or related to cases under Title 11.  Today, our

20  focus is on this court's related to jurisdiction.

21          An analysis of this court's related to

22  jurisdiction must begin with consideration of a Third

23  Circuit's seminal decision in Pacor which articulated an

24  expansive test finding related to jurisdiction if a matter

25  could have any conceivable effect on the reorganization

1    effort of the debtors.  Subsequent cases have refined and

2    clarified this analysis.

3           At bottom, case law teaches that this court must

4    find an identity of interest between the debtors and the non-

5    debtor defendants and the court must also find that the

6    reorganization process will be detrimentally affected in the

7    absence of relief.

8           As to the state actions, the parties have not

9    contended that this court lacks subject matter jurisdiction

10   over this matter as it relates to the debtors.  The focus of

11   the parties' submissions was largely on whether the state

12   actions are protected from an injunction because they are

13   regulatory or police powers under Section 362(b)(4) or,

14   alternatively, that the debtors have not carried their heavy

15   evidentiary burden for the entry of an injunction on the

16   merits.

17          The court's subject matter jurisdiction to enjoin

18   the state actions as to the OEMs and TKJP, relies on the

19   related to jurisdiction analysis that the court must perform

20   as to the individual actions, which I will discuss in a

21   moment.  And in which I can conclude that the court does, in

22   fact, possess related to jurisdiction to support the entry of

23   the injunctive relief to stay pending litigation against non-

24   debtors.

25

1          Accordingly, the court concludes that it has

2   subject matter jurisdiction to hear the debtors' request as

3   to the state actions, and I will turn to the merits in a

4   moment.

5          This court's jurisdiction to enjoin the

6   prosecution of the individual actions against the consenting

7   OEMs and TKJP has been hotly disputed by the tort claimant's

8   committee, the MDL claimants, the Suarez plaintiffs, and

9   others likely to be affected by the injunction.

10         I do note that the Turk plaintiffs have been

11   dismissed from this litigation consistent with

12   representations that were made in open court last week.

13         The debtors argue that this court possesses

14   related to jurisdiction over the individual actions.  They

15   point to the contractual indemnification obligations owed by

16   the debtors to the consenting OEMs and TKJP and also identify

17   risks of collateral estoppel and record taint in the event

18   the individual actions proceed against the consenting OEMs

19   without the debtors at the table.

20         In addition, the record reflects that TKJP shares

21   an identity of interest with these debtors by virtue of its

22   relationship within the corporate family.  And, finally, the

23   debtors contend that allowing the individual actions to

24   proceed will adversely impact their reorganization at this

25   very early stage by distracting their management and by

1  encouraging the debtors, the consenting OEMs, and the various

2  plaintiffs to focus their efforts on matters pending in

3  numerous forms around the country, rather than directing

4  their energies and attention to the reorganization process in

5  this court.

6          The objectors submit that the court's related to

7  jurisdiction is not so broad as to permit the entry of a stay

8  for the benefit of non-debtors, such as the consenting OEMs

9  and TKJP.  They contend that the indemnification obligations

10  to OEMs, upon which the debtors rely, are not a sufficiently

11  developed connection or obligation upon which to base this

12  court's jurisdiction.

13          For this point, the plaintiffs rely heavily on the

14  decisions in W.R. Grace and in Federal Mogul, which both

15  sides addressed and briefed extensively.

16          Separately, all of the objectors and,

17  particularly, the MDL plaintiffs, note that they are not

18  pursuing the consenting OEMs exclusively on a theory of

19  derivative liability for the debtors' wrongdoing.  Rather,

20  they are also pursuing direct theories and claims alleging

21  that the consenting OEMs acted wrongfully and with knowledge

22  of the defective airbags and the risk that they posed to the

23  public.  They reason that this fact undercuts the identity of

24  interest between the OEMs and the debtors.

25

1        Finally, the plaintiffs dispute whether the

2   debtors' reorganization will suffer from delay and

3   distraction in the absence of an injunction.  I am satisfied,

4   as I noted, that this court has related to jurisdiction over

5   the individual actions, sufficient to support entry of a

6   ninety (90) stay I mentioned at the outset.

7        I start with the indemnity issue.

8        The record developed at this early stage of the

9   proceeding is sufficient to establish that the debtors have

10  significant exposure on account of their contractual

11  indemnification obligations to the consenting OEMs.  The

12  court received substantial evidence and testimony as to the

13  debtors' contractual obligations to the consenting OEMs, and

14  the record reflects that hundreds of cross-claims have been

15  filed against the debtors by the consenting OEMs based upon

16  theories of indemnification and joint liability.

17       While the issue of the indemnities and their

18  enforceability is not ultimately before me, in its simplest

19  terms, I would be surprised if the situation were otherwise,

20  and if the debtors did not have at least a meaningful

21  prospect of indemnity exposure here.

22       The record is undisputed that these debtors sold

23  part under contract to be installed in vehicles manufactured

24  by the consenting OEMs.  And those parts have been

25  demonstrated to fail and to cause injury.  Yes, I understand

1 that there are other claims and other theories raised by

2 plaintiffs against the consenting OEMs, but literally

3 everything here begins with the delivery and installation of

4 a defective part manufactured by the debtors.

5         I do not accept the objector's contention that the

6 OEMs inability to be indemnified for their own negligent or

7 wrongful acts operates to vitiate the identity of interest

8 that's otherwise created by the contractual indemnity

9 obligations.

10         This observation applies as well to the lemon law

11 litigations where the court acknowledges that in some cases

12 the debtors may not be a main party.  Nevertheless, in each

13 of those cases, the debtors' interest are at issue as the

14 record reflects that the OEMs defenses in each of these cases

15 will certainly revolve around the acts and omissions of the

16 debtors.

17         Plaintiffs rely on W.R. Grace and Federal Mogul,

18 but I do not believe that those two cases require a different

19 conclusion.  As I said, the Pacor decision articulated a

20 broad conceivable effect standard.

21         The Third Circuit's decision in W.R. Grace

22 clarified that standard as it related to indemnity

23 obligations and held that if parties needed to prosecute and

24 prevail in an intervening lawsuit to vindicate a right to

25

1  indemnity that that was too attenuated a relationship to give

2  rise to a bankruptcy court's related to jurisdiction.

3          In that case, the debtor, who operated an asbestos

4  mine, sought to stay claims brought against the state of

5  Montana.  There was no contractual relationship between

6  Montana and the debtor at issue in the litigation.  And what

7  was alleged was, at best, a common law theory of indemnity

8  that claims by citizens of Montana against the state for

9  failure to warn and protect them from the dangers of the mine

10 could ultimately carry through to the debtor.

11          The Third Circuit found this connection too remote

12 and declined to find related to jurisdiction.

13          In <u>Federal Mogul</u>, the debtor sought to bring into

14 the bankruptcy court thousands of asbestos related state

15 court lawsuits against many defendants, and the court found

16 that there was no jurisdictional predicate for that relief.

17          This case before me today is not analogous to an

18 asbestos case where there are often dozens of potentially

19 responsible parties, each one effectively to the exclusion of

20 the others and a persistent and legitimate question of

21 whether a plaintiff has any actual relationship to a

22 particular defendant.

23          Here, every single claimant knows the vehicle they

24 purchased and can establish the fact that it contains a

25 Takata airbag system.

1    As to the <u>Federal Mogul</u> decision, I note that the

2  debtors in that case sought to bring a raft of state court

3  personal injury suits into the Bankruptcy Court for

4  disposition.  Here, by contrast, the debtors seek only a

5  brief stay of pending non-bankruptcy litigation.

6    I do not fully accept the MDL plaintiffs'

7  articulation of the "absolute and automatic" indemnification

8  standard that they derive from the <u>W.R. Grace</u> decision.

9    First, that phrasing does not appear in the <u>W.R.</u>

10  <u>Grace</u> decision and is not required by the logic of the

11  ruling.  <u>W.R. Grace</u> stands largely for the proposition that

12  routine theories of common law indemnity or joint liability

13  are too thin a reed upon which to base a bankruptcy court's

14  related to jurisdiction.

15    This case before me is clearly distinguishable

16  from <u>W.R. Grace</u> and <u>Federal Mogul</u>, and I'm satisfied that the

17  debtors' indemnity obligations meet the identity of interest

18  prong of the subject matter jurisdiction analysis.

19    We turn then to the potential impact on the

20  reorganization.  At the hearing, the objecting parties and

21  particularly the tort claimant's committee challenged the

22  debtors' evidence regarding the prospect of disruption and

23  distraction to their reorganization.

24    Specifically, they have pointed to discrepancies

25  between Mr. Caudill's filed declarations and his testimony

1  taken in deposition.  I do acknowledge that the debtors'

2  case, at least as made through Mr. Caudill's testimony, is,

3  in fact, relatively thin.

4        He acknowledged that he has not actively

5  participated or attending proceedings in the many litigations

6  that are pending.  And it is true that he struggled somewhat

7  in deposition to identify individuals in the organization

8  likely to be drawn away from critical duties to attend to

9  litigation matters.

10        But he also testified in his deposition at page

11  46, among several other places, that the demands of operating

12  the debtors are overwhelming in the present context.  And he

13  noted that while he was not personally focused on these

14  lawsuits, personnel under his supervision such as Mr. Teal,

15  Mr. Bowling, and Mr. Schubert are subject to being engaged

16  with these proceedings and away from their normal duties.

17        Secondly, the court is entitled to take notice of

18  the undisputed landscape of the proceedings before it.  The

19  debtors are engaged, as was noted multiple times at trial, in

20  the largest recall in history, while simultaneously

21  attempting to implement a reorganization strategy around the

22  globe involving dozens of plants and tens of thousands of

23  employees through proceedings that are pending here and in

24  Japan.  And, at the same time, they are a party to literally

25  hundreds of active lawsuits involving not only injured

1 plaintiffs but also naming the debtors' most important

2 customers and business partners, entities that are absolutely

3 crucial to the reorganization effort as it is presently

4 postured.

5        What the debtors seek and need is a breathing

6 spell to focus the attention of all stakeholders on the

7 reorganization process. And the record developed thus far

8 supports that need.

9        The objectors contend that the debtors'

10 prepetition negotiations with the OEMs, while conducting the

11 recall and participating in the litigation, is proof that no

12 stay is necessary. I do not accept that argument.

13        First of all, the overlay of being a debtor-in-

14 possession drastically changes the burdens and demands on a

15 corporate enterprise and its management team. And, second,

16 the record does not support a finding that the debtors were,

17 in fact, easily able to manage on a prepetition basis, as

18 these cases were commenced well before the completion of

19 documentation critical to their reorganization.

20        So, I'm not satisfied that the debtors'

21 prepetition progress undercuts their request for a stay

22 today.

23        Thus, the court finds that it possesses related to

24 jurisdiction on the grounds that, first, the contractual

25 indemnification obligations between the debtors and the OEMs

1 support a finding that there is an identity of interest

2 between the debtors and the OEMs and TKJP.  And, second, I am

3 satisfied that the continued prosecution of the state actions

4 and the individual actions will adversely impact the debtors'

5 efforts to reorganize.

6      As I mentioned at the outset, I will not stay the

7 multidistrict litigation as it relates to the consenting

8 OEMs.  The record reflects that the MDL has been pending

9 since 2014 and serves to consolidate scores of injury and

10 economic loss actions into a single court in the Southern

11 District of Florida.  The undisputed record further reflects

12 that that litigation is well advanced.  Judge Moreno has

13 announced his intention to commence trials in February and

14 April 2018 and significant discovery has occurred.

15      I acknowledge that the parties disagree as to

16 whether additional discovery will be needed from the debtors.

17 But I know that the MDL has utilized a special master to

18 coordinate and manage the ongoing discovery process among the

19 many parties.

20      On balance, I don't believe that the debtors have

21 carried their burden to obtain a stay of the MDL as to the

22 OEMs.  While certainly a large and complex proceeding, it is

23 effectively a single proceeding in a single court and is,

24 therefore presumably easier or, at least, less burdensome for

25 the debtors to monitor on a post-petition basis.

1    In addition, the record reflects that there have

2 already been several significant settlements in the MDL and

3 the court notes that the debtors are specifically not asking

4 for the MDL to be stayed as to approval and implementation of

5 those settlements.

6    At bottom, while I do acknowledge that this court

7 possesses jurisdiction to order a stay of the MDL, I am not

8 satisfied that the burden upon the debtors is sufficient to

9 warrant staying a single proceeding that captures scores of

10 suits and embodies a coordinated approach to discovery and

11 trial prep.

12    And I considered this in contrast to the risk and

13 burden associated with hundreds of suits pending in various

14 courts across the country. While the debtors, of course, may

15 continue to enjoy the protection of the automatic stay as to

16 the MDL, it is not too much ask that they monitor and

17 participate in that proceeding as they may see fit.

18    We turn now to the legal standard which is

19 governed by bankruptcy Code Section 105(a) and Rule 7065.

20    The elements for injunctive relief have been

21 extensively briefed and the applicable test is well

22 established.  Courts consider one, the debtors' likelihood of

23 success; two, the risk of irreparable harm; three, the

24 balance of the harms between the debtors and non-moving

25

1  parties and; finally, whether public policy supports entry of

2  the injunction.

3          I will first address the state actions.  And for

4  the reasons I will provide and, as I noted, I will enter a

5  preliminary injunction staying the proceedings commenced by

6  New Mexico, the U.S. Virgin Islands, and Hawaii for a period

7  of ninety (90) days to and including November 15, 2017.

8          We are proceeding under the assumption that the

9  matters that were initiated by these state entities are, in

10 fact, police and regulatory actions that are exempted from

11 the automatic stay under Section 362(b)(4), although the

12 debtors have reserved their rights to challenge these

13 assertions at a later point.

14         I start with the proposition that state police

15 power and regulatory actions are not immune from entry of

16 preliminary injunctive relief, notwithstanding Section

17 362(b)(4) which merely provides that such actions are not

18 automatically stayed by virtue of a bankruptcy filing.

19         And this is consistent the holding in <u>Enron</u> which

20 both sides discussed and mentioned in their briefing.

21         The states have correctly noted that the debtors

22 bear a heavy burden to demonstrate entitlement to such

23 relief.  Case law supports this position and common sense,

24 likewise, dictates that a bankruptcy court should be chary of

25

1  interfering with the exercise of a sovereign entity's police

2  and regulatory power.

3          However, I do find that the debtors carried their

4  burden sufficient for entry of the brief ninety (90) day that

5  I'm granting.  Before turning to the four-part test, I

6  mentioned above, I must observe that the court's ruling on

7  the state action is also informed by the following

8  circumstances that are specific to the case before me.

9          First, the record reflects that these debtors are

10  operating under the strict review and oversight of a federal

11  agency, the National Highway Traffic Safety Administration,

12  and they are conducting under federal direction and

13  compulsion a massive recall.

14          These cases present an unusual and, perhaps,

15  unique posture, at least in my experience.  The threat of

16  injury or loss posed by the debtors' products presents a

17  substantial and identical risk in all 50 states in the U.S.

18  territories.

19          Vehicles with components subject to the recall are

20  literally everywhere.  And, so, while the court acknowledges

21  that the state actions have been commenced to protect the

22  citizens of those particular states or territories which is

23  entirely proper and appropriate action by those authorities.

24  The fact is that there is nothing unique about the threat to

25  the citizens of those two states and the territory.

1      And that brings me to a fundamental tension

2 between the animating principles of the Bankruptcy Code and

3 the relief that is sought by the states in the state actions.

4      As we discussed at the argument last week, the

5 state actions represent the proverbial race to the

6 courthouse.  Each of the plaintiffs is identically situated

7 to every other non-moving state and territory.  And any

8 relief obtained by those entities in the state actions will

9 necessarily be to the detriment of the citizens of other

10 states.

11      Resources and funds will be committed to

12 facilitate a remedy in New Mexico, in Hawaii, or the U.S.

13 Virgin Islands and those resources will, thus, be unavailable

14 for other states individually or, more importantly, for a

15 coordinated nationwide approach.

16      I, of course, commend the authorities in New

17 Mexico, Hawaii, and the U.S. Virgin Islands for their

18 diligence in acting to protect their citizens.  But it is a

19 core principle of the U.S. Bankruptcy laws that proceedings

20 in other forums may be stayed in order to afford a breathing

21 spell and, more importantly, to provide for consistent

22 treatment of similarly situated stakeholders.  Vindication of

23 that core principle requires the imposition of a temporary

24 stay upon the state actions.

25

1    I also note that this conclusion is not affected

2  by TKJP's Chapter 15 filing.  And, specifically, the

3  provisions of Bankruptcy Code Section 1521(d).

4    The record reflects that the court ordered

5  supplemental briefing and I appreciate the submissions that I

6  received on Monday.  I find that Section 1521(d) has no

7  application to the proceeding before me.  It is a bar to a

8  foreign representative seeking to enjoin a state's police

9  power or regulatory action.

10    In this case, however, it is the Chapter 11 debtor

11  that is seeking the relief, not the foreign representative to

12  appear in this court late last week.  Now while the state

13  suggests that I should treat the request by the debtors as

14  functionally a request by TKJP and the foreign

15  representative, I note that I am obliged to respect both the

16  corporate separateness of these Chapter 11 debtors and TKJP,

17  as well as to recognize the distinction between the Chapter

18  15 proceedings and these Chapter 11 proceedings.

19    Turning then to the four-part test as it relates

20  to both the state actions and the individual actions.  The

21  four elements, as I said, are well established.

22    The burden is on the debtor to establish each of

23  the four elements.  And the Third Circuit further teaches in

24  the Revel decision that if the moving party does not carry

25  its burden as to likelihood of success and irreparable harm,

1   the court should deny the motion without reaching the last

2   two prongs.

3            I start with the likelihood of success.  Case law

4   here teaches that the proper focus is on the debtors'

5   prospects for a successful reorganization and whether the

6   conduct to be enjoined threatens that reorganization.  I am

7   satisfied that the debtors have carried their burden under

8   this prong.

9            The debtors' prospects for a successful

10  reorganization are clearly enhanced if at this critical

11  juncture early in these cases they and their largest

12  customers and other stakeholders are afforded the opportunity

13  to focus on the reorganization efforts.

14           I note that the debtors have requested a six month

15  stay until February 2018.  And it is under this prong that I

16  have reduced the duration of the injunction to ninety (90)

17  days.  Consistent with my comments a few moments ago, in a

18  nutshell, the debtors have asked for a six month stay to

19  implement a comprehensive global transaction and

20  restructuring.

21           But, as I noted earlier, other than the

22  accommodation agreements, no documents relating to the

23  proposed sale or the plan have been filed.  A brief stay to

24  permit that to occur and to allow a breathing spell for the

25  debtors is appropriate.

1        If in several months the debtors seek a further
2    injunction, I assume we will have a plan and a disclosure
3    statement and relevant deal documents on file.  And then all
4    parties, at that point, would have a sufficient basis to
5    evaluate the debtors' intentions, stakeholder support, and
6    prospects for a successful reorganization.

7        As to the second prong, I do find that the debtors
8    have carried their burden that they will suffer irreparable
9    harm in the absence of an injunction.  For the reason that I
10   stated a few moments ago, I find that the task of monitoring
11   hundreds of lawsuits and the prospect of what's been
12   collectively described as record taint including collateral
13   estoppel are material risks for these debtors.

14       The objectors contend that as a matter of law
15   there is no risk of collateral estoppel if the debtors choose
16   to sit out the various lawsuits they're moving forward.  I
17   understand that argument as a technical application of the
18   definition of collateral estoppel.  But as a practical
19   matter, I do not accept that these suits can proceed, where
20   the central feature of every suit is the unintended explosion
21   of the debtors' airbag system, without material effect on the
22   debtors down the line.

23       I will proceed to the balancing of the harms.  As
24   to balancing, I start by observing that a ninety (90) day
25   stay is a presumptively modest imposition in civil

1  litigation.  I am certainly aware from the record before the

2  court made last week through the submissions, as well as,

3  frankly, the court's long experience that a ninety (90) stay

4  may, in fact, throw off discovery and trial schedules.  But,

5  again, there is nothing truly remarkable there.

6          On the other side of the equation, I consider the

7  potential harm to the debtors' reorganization effort and the

8  functional benefit of requiring all stakeholders to focus

9  their attention on that effort.

10         While it is true, as noted above, that the court

11 has only limited visibility into the debtors' reorganization

12 strategy and plan, I do have a pretty good sense of the

13 negative consequences of a failed restructuring here on all

14 parties: the debtors, their employees, the OEMs, vehicle

15 owners awaiting recall, and the litigants as well.

16 Accordingly, I find that consideration of the balance of

17 harms favors the debtors.

18         The final prong is whether public policy favors

19 imposition of the requested injunction.  I have observed in

20 many other similar cases that this prong rarely plays a

21 significant part in the analysis.  The movant typically

22 offers an anodyne statement that the injunction will promote

23 reorganization and, therefore, is consistent with public

24 policy.

25

1    This case is different, and the court is obliged

2 to be mindful of the very significant policy considerations

3 that are before it.  On the one side are the claimants, many

4 grievously injured who wish to be pursue their rights and

5 remedies in the forum of their choice.  And also on that side

6 are the states, which are seeking to act to protect their

7 citizens and to enforce their respective statutes.

8    On the other side is the reorganization process

9 which cries out for a coordinated approach to address the

10 crisis that these debtors and other parties face.  As I noted

11 before if, in fact, the debtors' reorganization collapses,

12 the recall process may be put into serious jeopardy and the

13 prospects and options of the many claimants will certainly be

14 harmed.

15    Considering those two admittedly significant

16 considerations, I am satisfied that the entry of a ninety

17 (90) day stay on the terms that I've described is appropriate

18 and warranted and consistent with public policy.

19    Having granted the debtors' request for a

20 preliminary injunction, I turn now to a matter that was the

21 subject of a good deal of discussion at the hearing last

22 Wednesday.

23    Debtors' counsel acknowledged early in the hearing

24 that no one lawsuit posed a significant threat of delay or

25 distraction or consumption of time and resources.  It was the

1   accumulated mass of hundreds of litigations pending in scores

2   of forums -- and to use counsel's phrase death by a thousand

3   cuts.

4           And so, the debtors offered or committed to confer

5   with any litigant after entry of the injunction to respond to

6   individual circumstances that might warrant some form of

7   relief from the injunction they had requested.

8           Counsel for the tort claimants fairly observed

9   that the debtors' proposal threatened to turn the burden for

10  injunctive relief on its head.  And I expect that debtors'

11  counsel's reaction to that argument was along the lines of,

12  no good deed goes unpunished.

13          Here's where I come out.

14          For the reasons that I've stated, I'm satisfied

15  that the debtors have carried their burden for the entry of a

16  preliminary injunction staying litigation for ninety (90)

17  days.  As I noted, I do not believe as a practical matter

18  that the imposition of a three month stay in civil litigation

19  is a remarkable or unusual burden on the parties.

20          I am also acutely aware, however, of the suffering

21  and difficult circumstances that many claimants are facing.

22  And I do expect that the debtors to be responsive where

23  circumstances warrant.  And I would suggest that they start

24  by communicating with Mr. Rothenberg regarding the Krasulja

25  litigation.

1    To conclude, the court is entering a preliminary

2 injunction on the terms that I have just described, effective

3 as of 11:38 a.m. prevailing Eastern time today, August 16th,

4 2017.  And that injunction will expire at 11:59 p.m. on

5 November 15, 2017.

6    I will ask that the parties confer and submit an

7 order consistent with my ruling.  If the parties are unable

8 to agree upon the form of that order, I will make myself

9 available for a teleconference, if necessary.  But,

10 otherwise, I will look for that order to be submitted under

11 certification.

12    I thank you all for your time and your patience

13 this morning.  We are adjourned.

14     (Teleconference concludes at 11:37 a.m.)

15

16

17

18              CERTIFICATE

19

20 I certify that the foregoing is a correct transcript from the

21 electronic sound recording of the proceedings in the above-

22 entitled matter.

23 /s/Mary Zajaczkowski                    August 30, 2017
   Mary Zajaczkowski, CET**D-531
24

25