# EXHIBIT 18



**TRAVELERS**

**Scott Erikson**
*Director*
*Special Liability Group*
*One Tower Square 0 8FP*
*Hartford, CT 06183*

*Telephone: (860) 954-4898*
*Facsimile: (860) 277-9075*
*serikson@travelers.com*

Sent via U.S. Mail and Email
zsofia.porter@riotinto.com

September 13, 2017

Zsofia Porter
Rio Tinto
P.O. Box 6609
Englewood, CO 80155

> **Re: Ovarian Cancer Talc Lawsuits, [including *Joann Anglin, et al. v. Johnson & Johnson, et al.*, including Imerys Talc America, Inc. FKA Luzenac America, Inc., in the Circuit Court of The City of St. Louis, Missouri, Case No. 1522-CC09792]**
>
> **Policyholder:  Johnson & Johnson**
> **Travelers Claim #:  E3E9327**

Dear Ms. Porter:

We write to follow up on our prior communications and in further response to your request on behalf of by Rio Tinto America, Inc. ("Rio Tinto") that Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company ("Travelers"), provide defense coverage to, and/or contribute to the defense of, Imerys Talc America f/k/a Luzenac America, Inc. ("Imerys Talc") in the above-referenced lawsuits seeking damages for bodily injury allegedly caused by exposure to talc products (the "talc lawsuits"). As discussed below, we have reviewed the materials you provided. Based on this review, Travelers believes that Imerys Talc Vermont, Inc. ("Imerys Vermont"), as the party that is alleged to have succeeded to any rights under the policies issued by Travelers, and the party that is actually seeking defense coverage in connection with the lawsuits, must be included in any future dialogue.[1] In addition, to the extent Rio Tinto, Imerys Talc or Imerys Vermont seeks coverage

---

[1]     The attachment to your letter dated February 8, 2016 includes a reference to a policy allegedly issued by Northbrook Excess & Surplus Ins. Co., which we do not address herein. Travelers presently has no record of the referenced Northbrook policy. Our investigation is continuing and we reserve all rights with respect to the Northbrook policy, to the extent it exists and was issued by Travelers.

that may impair the limits potentially applicable to Johnson & Johnson, Travelers believes that Johnson & Johnson may need to participate in such discussions as well.

We base these conclusions on the following.

**Rio Tinto's Request For Defense Coverage For Imerys Talc**

Rio Tinto has requested that Travelers defend Imerys Talc under certain policies issued by Travelers to Johnson & Johnson, some of which allegedly insured an entity called Windsor Minerals, Inc. ("Windsor Minerals") as an additional named insured (the "J&J Policies"). In your February 8, 2016 letter and in subsequent communications, you have expressed a belief that "both by operation of law and by assignment," Imerys Talc is the successor-in-interest to Windsor Minerals and thus is entitled to coverage under the J&J Policies.

Based on our review of the information and documents you have provided, to the extent Windsor Minerals has a successor-in-interest – and Travelers cannot presently confirm that to be the case – that entity appears to be Imerys Vermont, and not Imerys Talc or Rio Tinto. In this regard, we note the following:

- On January 6, 1989, Johnson & Johnson sold 100% of the stock of Windsor Minerals (and Windsor Minerals' subsidiary, Western Source, Inc.) to Cyprus Mines Corporation ("Cyprus Mines").[2] From the transaction documents you provided, this transaction included no express assignment of rights under the J&J Policies to Cyprus Mines or any other entity.

- To the contrary, on and after January 6, 1989: (i) Johnson & Johnson retained its own rights in the J&J Policies; and (ii) to the extent Windsor Minerals was an additional insured under certain of the J&J Policies, Windsor Minerals retained its own rights as an additional insured, but only with respect to occurrences prior to the closing date. At no point did Cyprus Mines, the new corporate parent of Windsor Minerals, obtain rights under the J&J Policies pursuant to the transaction documents you have provided to Travelers.

- After the 1989 transaction, Windsor Minerals changed its name to Cyprus Windsor Minerals Corporation ("Cyprus Windsor").

- On June 5, 1992, Cyprus Mines formed a new subsidiary called Cyprus Talc Corporation ("Cyprus Talc"). Cyprus Mines transferred 100% of its beneficial interest in Cyprus Windsor stock to Cyprus Talc. Cyprus Mines also transferred other assets to Cyprus Talc, including Green Mountains Talc Co., Cyprus Industrial Minerals, and certain shares in entities known as DIMTA SA and Nihon Mistron Co. As noted above, Cyprus Mines itself did not acquire any rights under the J&J Policies. Accordingly, Cyprus Mines

---

[2]     Solely for the purpose of this correspondence, Travelers assumes that Western Source, Inc. continued to be a wholly owned subsidiary of Windsor Minerals through the transfers referenced herein.

could not and did not assign any such rights to Cyprus Talc, the new corporate parent of Cyprus Windsor f/k/a Windsor Minerals, *i.e.*, the entity that was a named insured under the J&J Policies.

- Also on June 5, 1992, Rio Tinto (then known as RTZ America) acquired all of the stock of Cyprus Talc, which in turn owned 100% of the stock of Cyprus Windsor f/k/a Windsor Minerals, as well as other stock and assets. Cyprus Talc thereafter changed its name to Luzenac America, and Cyprus Windsor changed its name back to Windsor Minerals. At no point did Luzenac America f/k/a Cyprus Talc acquire its own rights under the J&J Policies by virtue of these transactions.

- On June 10, 2011, Rio Tinto sold 100% of Luzenac America to Mircal S.A. Since Luzenac America never had any direct rights in the J&J Policies, Mircal did not acquire any such rights, which, at best, were retained with Windsor Minerals.

- Luzenac America thereafter changed its name to Imerys Talc, and Windsor Minerals changed its name to Imerys Talc Vermont, Inc. (*i.e.*, Imerys Vermont).

In sum, it appears that the stock ownership of Windsor Minerals (in addition to other entities, assets and liabilities) had been transferred, from Johnson & Johnson to Cyprus Mines (in 1989), then to Cyprus Talc (in 1992), then to Rio Tinto (f/k/a TMZ America) (also in 1992), and then to Imerys Talc (f/k/a Luzenac America) (in 2011). However, to the extent any entity potentially retained or currently potentially holds any rights as an additional insured under the J&J Policies, that entity would appear to be Imerys Vermont, and not Imerys Talc or Rio Tinto.

Travelers believes that any discussion concerning potential coverage under policies it issued must be between Travelers and its alleged policyholder, and thus while it is prepared to consider further whether there may be potential coverage for the talc claims, such discussions must include Imerys Vermont. We do not believe it is appropriate to have such discussions with Rio Tinto, at least without the involvement of Imerys Vermont, and particularly given that Rio Tinto does not appear to be named as a party in connection with any of these claims.

Additionally, as noted above, because Johnson & Johnson also retained rights under the same policies to which Rio Tinto and/or Imery Vermont seeks coverage, Johnson & Johnson may also need to participate in such discussions to avoid potential disagreements as between Travelers, Imerys Vermont and Johnson & Johnson with respect to the rights, obligations, terms and limitations under such policies. Please advise whether Rio Tinto or Imerys has already communicated with Johnson & Johnson with respect to Rio Tinto's request for coverage under the J&J Policies.

**Rio Tinto's Purported Subrogation and/or Contribution Rights**

In some of Rio Tinto's communications, it has also suggested that Rio Tinto is seeking defense coverage for Imerys Talc under a theory of subrogation and/or equitable contribution. We understand this request to be based on certain insurance policies issued to Rio

Tinto by Zurich America Insurance Company ("Zurich") when Rio Tinto owned Luzenac America (the "Zurich Policies"). Subrogation claims traditionally are asserted by the insurer of an alleged tortfeasor on whose behalf that insurer has paid against another co-tortfeasor and not against an alleged co-insurer. Although it is not entirely clear, we do not understand Rio Tinto to be seeking to assert such subrogation rights against Travelers.

Moreover, the Zurich Policies appear to be general liability policies that were issued to Rio Tinto when it owned Luzenac America. To the extent any payments have been made under the Zurich Policies, Rio Tinto has not explained why it believes it stands in Zurich's shoes, or even if it does, why Travelers has any obligation under the J&J Policies to contribute to the costs incurred in connection with any such payments. If you would like to provide additional information as to why Rio Tinto's insurance coverage issued by Zurich provides Rio Tinto with a basis to seek defense coverage from Travelers, we are prepared to discuss this issue further.

Similarly, given that Rio Tinto and/or Imerys Vermont presumably have more complete access to the transaction documents and histories than Travelers, if you believe we are mistaken in the above summary of the relevant transactions or their legal implications in terms of the rights, if any, under the J&J Policies, please let us know and we will consider such information.

Although Travelers requires additional information concerning the status of the talc litigation and the coverage requested in order to make a coverage determination, and its investigation is ongoing, for the reasons discussed above we believe such discussions need to be between the parties to the insurance contracts themselves. Rio Tinto does not presently have any rights under those policies for the reasons summarized above.

\*       \*       \*

Travelers reserves all of its rights without limitation with respect to Rio Tinto's demand for defense coverage for talc claims against Imerys Talc, and nothing herein should be construed as an admission or as a waiver or limitation of any of Travelers' rights, claims or defenses.

Please do not hesitate to contact us with any questions.

Sincerely,

Scott Erikson

Cc:     Mr. John Green
        Farella Braun & Martel LLP
        235 Montgomery Street
        San Francisco, CA 94104

        Gerald Begley – Senior Counsel, SLG